IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 4, 2007

**STACY JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 01-06779    James C. Beasley, Jr., Judge**

**No. W2007-00293-CCA-R3-PC  -  Filed April 11, 2008**

The petitioner, Stacy Johnson, was convicted of eight counts of burglary of a motor vehicle, two counts of burglary of a building, and theft of property over $1000. He received an effective sentence of thirty years. He seeks post-conviction relief arguing that he received the ineffective assistance of counsel at trial. He appeals the trial court's denial of post-conviction relief, arguing that his trial counsel was ineffective in failing to move to sever his indictments and in failing to investigate an alibi defense and defense witnesses. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

Charles S. Mitchell, Memphis, Tennessee, for the appellant, Stacy Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michele Parks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner's convictions relate to several vehicle break-ins, break-ins at two businesses, and an automobile theft on March 19, 2001. At the post-conviction hearing, the petitioner testified that on that day, he had hired a cab to take him from his mother's house to Seesel's grocery store. He denied any involvement in the burglaries and thefts and said he had left Seesel's to meet a date when a police officer attacked him, arrested him, and put him in custody.

The petitioner testified that his trial counsel did not ask him much about his case the first day they met. He said counsel was mostly concerned with other cases he had, although counsel did ask him if he had any witnesses. The petitioner said he had a number of "report dates" before trial, during which he reported to the trial court on the progress of his case. He said he met with his trial

counsel on these dates for about fifteen to twenty minutes and that counsel spent most of the time talking about potential plea offers and resetting the case. He said counsel did not talk about the investigation of the petitioner's case. The petitioner was in jail from the time he was arrested until the time of trial, but he said counsel only visited him in jail once over the course of fifteen months to discuss a plea offer. He said trial counsel never presented him with any discovery materials and never talked to him about the indictments and the elements of the charges against him. He said counsel also never informed him of the range of punishment he was facing for his crimes.

The petitioner said he told counsel about an alibi defense–that he had hired a cab the day he was arrested. He wrote a letter to counsel stating that on the evening of March 19, 2001, he hired a cab from his mother's house to Seesel's. He said that, to his knowledge, counsel did not contact the cab company or his mother to verify this. He said counsel did not ask him many details about the case. The petitioner said that the first time he was presented with a plea offer from the state was fifteen months after his arrest. He said he and counsel had a "breakdown in communication" when the petitioner refused the offer. He said they had "cross words" with each other and yelled at each other. The petitioner said that, after that episode, he wrote letters to the Board of Professional Responsibility and the trial court asking that his counsel be dismissed and that he be appointed new counsel. He said he wanted new counsel because he and counsel had a "lack of communication" and were unable to agree on anything. He said that counsel stopped communicating with him and that he requested many things of counsel that counsel did not do. He said that, for instance, he requested counsel to file motions for exculpatory evidence and for the state's intent to use evidence and to provide him with a copy of the preliminary hearing transcript. He said counsel did none of this. He said he also asked counsel to file a motion to sever his indictments in order for him to receive separate trials on the separate charges.

The petitioner testified that his trial counsel never discussed trial strategy with him. He said he believed counsel was not interested in representing him. He said he did not know who the state's witnesses were or what their testimony would be until the trial. He said counsel told him the state had a surveillance video but did not tell him about witnesses who saw him going into and out of a stolen car. He said counsel never asked him about any mental problems, learning disabilities, or drug or alcohol abuse. He said counsel did not talk to him about his testifying at trial, although he did have a hearing during which he told the court he did not wish to testify. He said he got a different attorney to represent him for his motion for a new trial and on appeal.

On cross-examination, the petitioner testified that he gave his trial counsel information about the cab company and his mother. He said he also told counsel that he was meeting a girlfriend on March 19, 2001, but that he did not want his girlfriend involved in the case because she was married at the time. He said he was present during the preliminary hearing and heard the evidence the state presented. However, he said trial counsel never talked to him about what was going to happen during the trial. He acknowledged that his theory of the case was that he did not commit the crimes and that trial counsel cross-examined the state's witnesses who said they could not identify the petitioner as the person who broke into their cars. He acknowledged that the state presented a surveillance videotape and that trial counsel argued that the person in the tape was not the petitioner.

He acknowledged that he had several prior felony convictions, which influenced his decision not to testify. However, he said his trial counsel never talked to him about his prior convictions or informed him that he would be sentenced as a career offender.

The petitioner's trial counsel testified that he was appointed to represent the petitioner in September 2001. He said that his practice during a first meeting with a new client is to review the client's file and the indictments and get the client's story about the case. He said he remembered the petitioner telling him that he did not commit the crimes in question and that he was meeting a woman on the night that the crimes occurred. The petitioner would not, however, give counsel the name or contact information of the woman because she was married and he wanted to protect her identity. He said he did not recall anyone from the petitioner's family contacting him. He said that he repeatedly asked the petitioner to give him the name of the woman the petitioner said he met the night of the burglaries but that the petitioner repeatedly refused. Trial counsel believed that this woman would be the best witness for the petitioner at the trial and that without her involvement, they "didn't have anything to go forward on" except the petitioner's word. He said he did not recall the petitioner giving him information about a cab company, although he later said he remembered the petitioner mentioning a cab but that his primary interest was in finding the woman the petitioner met that night.

Counsel testified that he reviewed the petitioner's criminal history, which he called "extensive." He said he did not look into the petitioner's family or mental health history. He said he never questioned the petitioner's competence. Counsel testified that he never intended to take the case to trial but rather sought to obtain a plea offer from the state with a minimal amount of incarceration. He said that the evidence against the petitioner was overwhelming and that he thought getting a good plea agreement was in the petitioner's best interest. He said that he did eventually get the state to offer the petitioner a ten-year sentence but that the petitioner refused the offer.

Counsel testified that he viewed and copied the state's file and was aware of all the evidence that would be presented against the petitioner. This evidence included surveillance videotapes, police testimony that the petitioner was driving a stolen car with stolen property from other burglarized cars in it, and the proximity of the cars and buildings where the burglaries occurred and where the petitioner was found. He said evidence in the petitioner's favor included no one seeing the petitioner burglarizing the cars and the police obtaining no fingerprints connected to the petitioner. Counsel said he "could not imagine" that he did not give the petitioner discovery material, although he could not specifically remember what he gave the petitioner and when.

Counsel testified that he had difficulty working with the petitioner. He said they had arguments regarding the petitioner's refusal to reveal the identity of the woman he was with the night of the burglaries. He said the petitioner would not cooperate with him at times and asked the trial judge to remove counsel from the case. He said that after the petitioner rejected the ten-year plea offer, his only available trial strategy was to question the identity of the petitioner as the burglar, which he did through his cross-examination of witnesses and argument that the petitioner was not the person shown in surveillance videos. He said he did not use the services of an investigator

because the petitioner did not give him the information that would have been most useful in an investigation, i.e., the identity of the woman with him the night of the burglaries. He said he talked to the police officers involved in the case, although he did not do this when he was first appointed to the case.

Counsel testified that he and the petitioner never discussed the issue of severing his indictments. He said he chose not to argue for a severance because his strategy was to get through trial and then obtain concurrent sentences based on the offenses all being part of one event. He was concerned about the sentences because of the petitioner's criminal history. He said that to obtain a severance, he would have had to argue that the offenses were separate acts that should be tried separately. He feared he would lose credibility with the trial court if he argued both things. The state stipulated that the only motion trial counsel filed on the petitioner's behalf was a motion for discovery.

The trial court accredited the testimony of counsel, found that the petitioner did not receive the ineffective assistance of counsel, and denied the petition for post-conviction relief. The petitioner appeals this judgment, arguing that his counsel was ineffective in not moving to sever his charges and in not investigating his alibi and defense witnesses. The state counters that trial counsel's performance was not deficient or prejudicial to the petitioner.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068. Failure to satisfy either prong results in the denial of relief. Id. at 697, 104 S. Ct. at 2069.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

In the present case, the petitioner alleges trial counsel rendered the ineffective assistance of counsel in two ways. First, he alleges that counsel was ineffective in failing to sever the eleven indictments on which he was convicted. However, the petitioner has not presented evidence that a motion to sever offenses would have been successful. We note that this court previously considered whether it was error for the trial court not to sever the petitioner's charges. The court held:

> We cannot conclude that the trial court erred when it consolidated the [petitioner's] offenses. The offenses in this case appear to be part of a common scheme or plan because they are part of the same criminal episode. The offenses occurred in the same geographic area during the same time period, and evidence of many of the crimes was found in the vehicle in which the [petitioner] was apprehended. This connection shows a common plan and, further, evidence of one offense would be admissible in the trial of the other offenses if the offenses had been severed. Therefore, we conclude that the trial court did not err by allowing the offenses in this case to be consolidated.

State v. Stacy Johnson, No. W2004-00464-CCA-R3-CD, Shelby County, slip op. at 13 (Tenn. Crim. App. Mar. 15, 2005). Although the petitioner now claims that it was trial counsel, as opposed to the trial court, who erred in not seeking to sever the offenses, our court's prior opinion on the severance issue leads us to conclude that a motion by trial counsel to sever charges likely would not have been successful. Further, as this court previously concluded, even if the charges were severed, evidence of the different charges would have been admissible in the separate trials. Therefore, we are not convinced that the result of the case would have been different had counsel moved for a severance of offenses. The petitioner has not shown that he was prejudiced by the actions of counsel and, therefore, has not shown ineffectiveness on this issue.

Regarding the petitioner's second allegation of counsel's ineffectiveness, that counsel failed to investigate his alibi and other defense witnesses, we note that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 795 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Although the petitioner testified at the post-conviction hearing that he had an alibi and potential defense witnesses, he did not present these witnesses at the post-conviction hearing to testify as to what counsel would have discovered upon adequate investigation. Without this evidence, we cannot conclude that the result of the petitioner's case would have been different had counsel done further investigation. Again, the petitioner has failed to show that the actions of counsel prejudiced him. We cannot conclude that his trial counsel was ineffective.

For the foregoing reasons, we conclude that the trial court did not err in denying the petitioner post-conviction relief. The judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE